## WEEKS *vs.* EATON.

A quitclaim deed by a mortgagee, of all his interest in the land, will convey no title unless the debt secured by the mortgage be transferred.

Whether a deed of the land with warranty will transfer the debt, *quære*?

If a mortgage be conditioned for the payment of money, and there be no other security for the debt than the mortgage, whether a deed of the land will transfer the debt, *quære*?

A mortgage was made to indemnify the mortgagee on account of his liability as surety upon a bond for the mortgagor. The mortgagee made a settlement with the obligee of the bond, to which it did not appear that the mortgagor was a party, and paid him the sum of $500.00. He, then, not having entered upon the land, released all his interest in the mortgaged premises, but made no transfer of the debt.—*Held*, that his deed conveyed no title.

Land was described in a deed as " one undivided third part of a certain tract of land I purchased in—S. C. Badger and John Whipple of Joseph Robinson." Whether there be a patent ambiguity in the description, *quære* ?

TRESPASS, for taking and carrying away a quantity of hay on the 18th day of July, 1843.

The parties agreed that on the 24th day of July, 1835, the title to one undivided third part of about five acres of land, the *locus in quo*, situated in West street, in Concord, was in Horatio Hill, the land having been conveyed to him, John Whipple and S. C. Badger, by Joseph Robinson, which is the only conveyance ever made by Robinson to them or to Badger. The other two-thirds of the land are the property of the plaintiff's lessor, and at the time of the alleged trespass the plaintiff was in possession of the *locus in quo* under a lease from Badger and Whipple, for the term of three years from the 24th day of March, 1842, purporting to include the whole five acres.

On the 10th day of January, 1836, Horatio Hill conveyed to N. G. Upham in fee and in mortgage certain parcels of land, among which were the following : " one undivided half of a certain tract of land I bought of Joseph Robinson, situated in Concord, on the Dark Plain, so called ; also one undivided third part of a certain tract of land I purchased in—S. C. Badger and John Whipple, of Joseph Robinson." By this deed Hill intended to mortgage to Upham his third part of the *locus in quo*. The mortgage was conditioned for the performance by Horatio Hill of the covenants in a bond to Isaac Hill, signed by Horatio Hill as principal, and by Upham as surety, and dated on the 10th day of October, 1834.

On the 29th day of March, 1841, Upham, claiming to be mortgagee by virtue of Horatio Hill's deed of mortgage, and having on settlement paid Isaac Hill the sum of $500.00 as surety for Horatio upon the bond aforesaid, quitclaimed to Isaac Hill all the right, title and interest he had in one third part of the tract of five acres, to be applied by Isaac Hill in payment of his debt against Horatio, for which Upham was surety. On the same day Isaac Hill quitclaimed for a valuable consideration all his interest in the land to John Whipple. This interest was alleged by the defendant to be the interest of a mortgagee before foreclosure ; but this is denied by the plaintiff. Isaac Hill made to Whipple no other transfer of the debt secured by the mortgage than by quitclaiming his title to the land. On the 6th day of December, 1841, Whipple conveyed to S. C. Badger, the plaintiff's lessor, one half

of the third part of said five acres, and on the 31st day of October, 1843, George Minot, assignee in bankruptcy of said Whipple, conveyed the other half of the land to Badger, it being all the interest Whipple had in the premises.

On the 26th day of November, 1838, Jacob B. Moore made an assignment of certain property for the benefit of his creditors, a part of which property was a balance of book account against Horatio Hill. This claim the defendant received by virtue of said assignment, commenced a suit upon it in the name of Moore, and recovered judgment thereon. On the 21st day of June, 1831, he caused an execution issued upon the judgment to be extended upon one undivided third part of said five acres, in part satisfaction of the debt, and possession thereof to be delivered to himself, as attorney to said Moore.

The defendant took nothing from the land after the levy, until the time of the alleged trespass, when he entered upon the land, and caused one third part of the hay which had been cut by the plaintiff, to be taken and carried away, which is the trespass complained of.

If the court should be of opinion that the plaintiff is entitled to recover on these facts, judgment is to be rendered for him for damages, to be assessed by an auditor; otherwise, judgment is to be rendered for the defendant.

*Perley*, for the plaintiff. The question is as to the sufficiency of the description in the deed from Hill to Upham, which refers to the deed from Robinson to Hill. A sufficient description of premises conveyed can be made by reference to the description in a former deed. *Woodman* vs. *Lane*, 7 *N. H. Rep.* 241. Here is undoubtedly a mistake. The land conveyed by this deed is the land conveyed by some deed from Robinson to Hill. What conveyance from Robinson to Hill is meant? We produce a deed to Hill, Badger and Whipple. If there be any ambiguity, it is latent. The case finds what deed was meant, by stating that the land was conveyed by a certain deed.

After Upham had paid the $500.00, he had a right of entry into the land, and an assignable interest. *Barker* vs. *Parker*, 4

*Pick.* 505. Upham held the land as security. When he conveyed it, the conveyance operated as an assignment of his interest. *Hunt* vs. *Hunt,* 14 *Pick.* 374; *Freeman* vs. *McGaw,* 15 *Pick.* 82. Was his deed anything more than a conveyance of the land, and if not, did the debt pass? If the debt was not conveyed, nothing was. But the deed at least operates as an authority. It would be against the intent of the parties, if the debt were severed from the land.

*Eaton,* for the defendant. The premises are described as "one third of the land I purchased." We admit that the intention was to convey the premises in controversy, but that intention was not carried into effect. What the intention was, cannot be ascertained from the deed.

The conveyance is void as to creditors, because the condition of the bond is not fully set forth. What are the conditions? There is not such a reference to them as the statute requires, under which the condition should be fully stated. *Smith* vs. *Lowell,* 6 *N. H. Rep.* 67; *Winkley* vs. *Hill,* 9 *N. H. Rep.* 32; *Tifft* vs. *Walker,* 10 *N. H. Rep.* 150.

The debt in such a case as this must be assigned, or the deed will be invalid. *Bell* vs. *Morse,* 6 *N. H. Rep.* 205; *Smith* vs. *Moore,* 11 *N. H. Rep.* 55. Isaac Hill's deed does not convey the debt to Whipple. It does not purport to convey the debt secured by the mortgage to Upham. *Kelley* vs. *Burnham,* 9 *N. H. Rep.* 20.

GILCHRIST, J. We have repeatedly settled that a deed of land by a mortgagee will pass nothing, unless the debt secured by the mortgage be transferred. *Bell* vs. *Morse,* 6 *N. H. Rep.* 205; *Smith* vs. *Smith, Supra* 56–68. And it was also settled in the latter case, that the mere fact that the mortgagee has the right to transfer the debt to his grantee, will not cause the deed to convey an interest in the land, unless the debt be transferred. And a mere entry by the grantee of a mortgagee, before an entry by the latter, without the possession required by the statute, is of no effect, and his deed will pass no interest.

Weeks *v.* Eaton.

Until the settlement between Upham and Isaac Hill, whatever claim the former had against Horatio Hill was a matter of unliquidated damages. Perhaps we have a right to infer that the sum of $500.00 which he paid Isaac Hill was the result of a compromise, and in that case Horatio Hill would not be bound, unless he assented to it; but it does not appear that he did so. The propriety of Upham's payment to Isaac Hill is still an open question as regards Horatio. Upham, then, having an unliquidated claim for damages against Horatio, released all his interest in the land. What title could, then, vest in his grantee ? Upham had not entered into the land, and had not assumed to transfer any debt. If the claim had been liquidated, perhaps, although he might not have had a debt, strictly speaking, against Horatio, the claim might have been assigned by a deed of the land with warranty. Or, if the mortgage had been conditioned for the payment of a sum of money, no security having been given for it other than the mortgage, perhaps a conveyance of the land would transfer the debt. But as the facts are in this case, his release transferred no interest whatever ; and, as the plaintiff's title depends upon the validity of this deed, the action cannot be maintained.

It is, therefore, unnecessary to settle the question whether Horatio Hill's deed to Upham included the land in dispute ; because, if it did, the title is still in Upham. But he mortgaged to Upham " one undivided third part of a certain tract of land I purchased in — S. C. Badger and John Whipple of Joseph Robinson." If there be any ambiguity in this description, it would seem to be a patent one. But we cannot know judicially that the words, " S. C. Badger," &c. are not the name of a place. Such a name would be no more singular than " Jo Daveis County," which is a well known place. But we are not compelled to discuss and determine this point, as, for the reasons above stated, there must be

*Judgment for the defendant.*